UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| TARGETED JUSTICE, INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>OFFICE OF THE ATTORNEY GENERAL, UNITED STATES DEPARTMENT OF JUSTICE,<br><br>*Defendant.* | Civil Action No. 6:24-cv-00016 |

## REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendant the United States Department of Justice ("DOJ"), along with its component co-Defendant the Office of Information Policy ("OIP")[1] (collectively, "Defendant"), by and through undersigned counsel, hereby submit this Reply to the Response filed by Plaintiff Targeted Justice, Inc. ("TJ") on April 14, 2025 (ECF No. 26) to Defendant's Motion for Summary Judgment (ECF No. 23).

As discussed in Defendant's Motion for Summary Judgment, the only relevant issue in this case is whether Defendant conducted an adequate search in response to Plaintiff's Freedom of Information Act ("FOIA") request. At points in its Response, Plaintiff attempts to discredit certain aspects of Defendant's search and the declaration submitted in support of Defendant's Motion for Summary Judgment. Those allegations are discussed below. However, the remainder of Plaintiff's

---

[1] The Initial Request Staff of OIP is responsible for processing FOIA requests seeking records from the Office of the Attorney General, the DOJ office that was listed as a co-Defendant in Plaintiff's Complaint. *See* ECF No. 1.

response consists of innuendo, speculation, and other allegations which do not warrant any discussion because they have no bearing on this Court's assessment of the adequacy of the search conducted in response to Plaintiff's FOIA request.

## I.     Brinkmann Declaration

As outlined in Defendant's Motion for Summary Judgment to demonstrate the adequacy of its search under the FOIA, an agency may submit affidavits or declarations explaining the scope and method of its search in reasonable detail and in a non-conclusory fashion. *See generally* ECF No. 23 at 5. These agency submissions "are afforded a presumption of good faith, which cannot be rebutted by purely speculative claims about existence and discoverability of other documents." *Gahagan v. USCIS*, 147 F. Supp. 3d 613, 622 (E.D. La. 2015) (internal citations omitted); *see also Batton v. Evers*, 598 F.3d 169, 176 (5th Cir. 2010) ("[I]n analyzing the affidavits and declarations submitted by the government, the agency is entitled to a 'presumption of legitimacy'" (citing *U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991))). In its Response, Plaintiff asserts that the Declaration of Vanessa R. Brinkmann that Defendant submitted in support of its Motion for Summary Judgment (hereinafter "Brinkmann Decl.") is insufficient because (a) it relies on hearsay; and (b) the declarant lacks personal knowledge. *See generally* ECF No. 26 at 2, 6, 8.

*(a)  Hearsay*

Courts have consistently rejected claims that agency declarations submitted in FOIA cases contain inadmissible hearsay. *See, e.g., Highland Cap. Mgmt., LP v. IRS,* 408 F. Supp. 3d 789, 802 n.2 (N.D. Tex. 2019) (noting that "[g]enerally, declarations accounting for searches of documents that contain hearsay are acceptable" (internal citations omitted)); *Barnard v. DHS*, 598 F. Supp. 2d 1, 19 (D.D.C. 2009) (stating that "FOIA declarants may include statements in their declarations based on information they have obtained in the course of their official duties"); *Gerstein v. DOJ,*

No. 03-04893, 2005 U.S. Dist. LEXIS 41276, at *14-16 (N.D. Cal. Sept. 30, 2005) (denying plaintiff's motion to strike agency's declaration because declarant permissibly included "facts relayed from individuals who had first-hand knowledge"). Ms. Brinkmann's declaration and discussion of the search conducted in response to Plaintiff's FOIA request are similarly proper because they are based on "information acquired by [her] in the course of performing [her] official duties, including information provided to [her] by others within the Department with knowledge of the information at issue in this case." Brinkmann Decl. ¶ 3. Moreover, Ms. Brinkmann's statements regarding Defendant's discussions with DOJ leadership offices and attorneys from the Terrorist Screening Center Law Unit ("TSCLU") are not only permissible, but they also highlight the extraordinary steps that Defendant took to identify additional records custodians or locations or potential search leads after its initial searches were conducted. *See id.* ¶¶ 20-22.

    (b)  *Personal Knowledge Requirement*

An agency declarant need not have participated personally in a FOIA search to meet the personal knowledge requirement. *See generally Gahagan,* 147 F. Supp. 3d at 621. Rather, a declarant in a FOIA case satisfies this requirement "if she attests to her personal knowledge of the procedures used in handling plaintiff's FOIA request and her familiarity with the documents in question." *Id.* When an agency's search is challenged, a declaration from an agency employee responsible for supervising or coordinating the search efforts has been found to satisfy the personal knowledge requirement. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (ruling that employee "in charge of coordinating the [agency's] search and recovery efforts [is] the most appropriate person to provide a comprehensive affidavit").

*Gahagan* involved a FOIA action brought against the United States Citizenship and Immigration Service ("USCIS"). *See Gahagan,* 147 F. Supp. 3d at 619. In support of its Motion

for Summary Judgment, USCIS provided an affidavit from the Assistant Center Director for the FOIA Unit of the USCIS's National Records Center ("NRC"). *Id.* at 621. The declarant attested to her familiarity with both the search procedures that the agency used and the documents at issue, and the Court determined she had sufficient personal knowledge to be competent to testify on the issues at hand. *Id.* at 621-22. In this case, Ms. Brinkmann similarly attests, "I make the statements herein on the basis of personal knowledge, including my extensive experience with the FOIA, with OIP, and in handling FOIA requests for senior leadership office records . . ." Brinkmann Decl. ¶ 3. Further, Ms. Brinkmann's declaration outlines her extensive experience with the FOIA and her supervisory role over Defendant's FOIA processing, both of which speak to Ms. Brinkmann's personal knowledge of Defendant's search efforts and attest to her competency to serve as the declarant in this case. *See* Brinkmann Decl. ¶ 1; *Meeropol v. Meese*, 790 F.2d 942, 951 (D.C. Cir. 1986) (approving agency's reliance on affidavit of employee responsible for supervising search).

## II.   The Decision Not to Search Classified E-mails

In its Response, Plaintiff asserts that Defendant is required "to search *everywhere*" for records responsive to its FOIA request. *See* ECF No. 26 at 5 (emphasis added). Plaintiff also suggests that Defendant "arbitrarily refuse[d] to search its e-mail systems," specifically highlighting that Defendant "did not search 'classified' e-mails." *Id*. On both points, Plaintiff misses the mark.

To reiterate the standard to be met for Defendant's search, a satisfactory FOIA search need not include every system of records to pass muster. *See Montgomery v. IRS,* 40 F.4th 702, 714 (D.C. Cir. 2022) ("[T]he agency need not 'search every record system'. . ." (citing *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990))); *Batton*, 598 F.3d at 176 (5th Cir. 2010) (concluding that agency's search was reasonable despite some records systems not being

searched). The relevant inquiry is whether an agency's search methods, including locations searched, "can be reasonably expected to produce the information requested." *Batton*, 598 F.3d at 176 (citing *Oglesby*, 920 F.2d at 68).

In processing FOIA requests, Defendant conducts searches "in a dynamic and comprehensive manner" and considers all potential records repositories under its purview to determine where potentially responsive records are likely maintained "based on a review of the content of the request and the nature of the records sought therein, as well as [Defendant's] familiarity with the types and location of records that each office maintains, discussions with knowledgeable personnel within the Department, and any research that [] staff may conduct on the topic of the request." Brinkmann Decl. ¶¶ 8, 9. In this case, nothing referenced in Plaintiff's FOIA request implicated classified matters, and thus Defendant's initial determination to search unclassified records systems was reasonable. *See Kowal v. DOJ*, 107 F.4th 1018, 1028-29 (D.C. Cir. 2024) (confirming that "[a]gencies have the discretion to construe requests reasonably and conduct flexible and targeted searches within their internal records systems," and need not "boil[] the ocean in search of responsive records"). Moreover, Defendant's thorough review of all potentially responsive records from its initial search did not identify any potential leads necessitating a classified search. *See* Brinkmann Decl. ¶¶ 15, 17, 19. And yet, Defendant did, in fact, take extraordinary additional steps to ascertain whether a search of classified e-mails might be warranted, including discussing potential search custodians and locations with DOJ leadership officials and TSCLU attorneys. *See id.* ¶¶ 20-22. This additional due diligence by Defendant followed a search of three thoughtfully chosen records systems, which, in sum, comprises a comprehensive search "reasonably calculated to locate all responsive records." *See id.* ¶¶ 13-19, 23.

### III.     Search "Cut-Off" Date

Defendant issued its final response to Plaintiff's FOIA request on November 14, 2024. *See* Brinkmann Decl. ¶ 7. Plaintiff alleges in its Response that since the date of Defendant's final response, Defendant has not "carr[ied] out a thorough search under the new administration's commitment to 'maximum transparency.'" *See* ECF No. 26 at 2. However, Defendant has no obligation under the FOIA to conduct a new search simply because of an administration change.[2] As a general matter, courts have recognized that an agency's search obligations for each FOIA request necessarily have a temporal limitation, or a "cut-off" date. *See Bonner v. U.S. Dep't of State*, 928 F.2d 1148, 1152 (D.C. Cir. 1991) (observing that "[t]o require an agency to adjust or modify its FOIA responses based on post-response occurrences could create an endless cycle of judicially mandated reprocessing"). In this case, the cut-off date for Plaintiff's FOIA request, March 5, 2024, appropriately aligns with the date on which Defendant initiated its searches for records in response to Plaintiff's FOIA request. *See* Brinkmann Decl. ¶ 11. Courts have found date-of-search cut-off dates to be reasonable and favorable to those based on the date of a FOIA request or the date of its receipt by an agency. *See Pub. Citizen v. Dep't of State*, 276 F.3d 634, 644 (D.C. Cir. 2002) (concluding that date-of-search cut-off is favorable to date-of-request cut-off); *Van Strum v. EPA*, 972 F.2d 1348, at *2 (9th Cir. 1992) (agreeing that date-of-search cut-off date is "the most reasonable date for setting the temporal cut-off in this case"). Defendant received Plaintiff's FOIA request on February 5, 2024, and subsequently initiated its searches on March 5, 2024, with a date range of January 1, 2003, through March 5, 2024, thereby satisfying its search

---

[2] If agencies were required to redo FOIA searches based on changes in the Executive Branch, thereby creating an endless loop of searching and re-searching for records, one can only imagine how inefficient and unproductive that would be. This is illustrated in the instant case— the administration's new "commitment to maximum transparency" does not and would not change the fact that Defendant is unable to locate any documents responsive to Plaintiff's request.

obligations under the FOIA. *See* Brinkmann Decl. ¶¶ 4, 11. Furthermore, discussion of cut-off dates aside, Plaintiff's assertion that Defendant is required to redo its search is based on nothing more than unfounded accusations of impropriety, which do not provide grounds to invalidate an adequate search or undermine the good faith afforded to agency declarants. *See Robert v. CIA*, 779 F. App'x 58, 59 (2d Cir. 2019) (per curiam) (holding search reasonable and noting that agency declarations "'are accorded a presumption of good faith' and 'cannot be rebutted by purely speculative claims' or bare assertions" (internal citations omitted); *SafeCard Servs., Inc. v. SEC*, F.2d at 1200, 1202 (holding that plaintiff's "purely speculative" claims concerning adequacy of agency's search "support neither the allegation that [agency's] search procedures were inadequate, nor an inference that it acted in bad faith").

Accordingly, Defendant respectfully requests the Court grant its Motion for Summary Judgment and dismiss Plaintiff's case with prejudice.

    Respectfully submitted,

    NICHOLAS GANJEI
    UNITED STATES ATTORNEY

By: /s/*Lander B. Baiamonte*
    LANDER B. BAIAMONTE
    Assistant United States Attorney
    Southern District of Texas No.: 3312493
    Texas State Bar No.: 24103831
    800 N. Shoreline Blvd., Suite 500
    Corpus Christi, TX 78401
    Telephone No.: (361) 888.3111
    Facsimile No.: (361) 888.3200
    E-Mail: lander.baiamonte@usdoj.gov
    **ATTORNEY FOR DEFENDANT**

## CERTIFICATE OF SERVICE

    I, Lander B. Baiamonte, certify that on April 21, 2025, the foregoing pleading was filed with the Court through the Court's CM/ECF system on all parties and counsel registered with the Court CM/ECF system.

                                          By:  /s/*Lander B. Baiamonte*
                                                   LANDER B. BAIAMONTE
                                                   Assistant United States Attorney